UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ARMANDO GARCIA-GARCIA,<br>Petitioner<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Respondent | CIVIL NO. 05-1610(DRD)<br>re: Criminal 97-76-8(DRD)<br><br>Section 2255 |

# OPINION AND ORDER

Presently before the Court is a pro se habeas petition filed by Armando García-García ("petitioner") pursuant to 28 U.S.C. § 2255, contesting the legality of his conviction and sentence. (Civil Docket Nos. 1, 9).

For the reasons herein set forth, petitioner's Section 2255 motion is DENIED.

### Procedural Background

On December 14, 1998, a Grand Jury of this district returned a Superseding Indictment charging the petitioner with conspiracy to possess with intent to distribute multi-kilogram quantities of controlled substances, to wit, in excess of 5 kilograms of heroin, in excess of 5 kilograms of cocaine, in excess of 5 kilograms of cocaine base, and in excess of 100 kilograms of marihuana, all in violation of Title 21, United States Code, Sections 841(a)(1) and 846. (Docket Nos. 1, 397).

On June 25, 1999, on the eighty-sixth day of trial, a jury returned a verdict of guilty against the petitioner. (Docket No. 855).

On February 28, 2004, petitioner was sentenced to life imprisonment as to Count Two of the Superseding Indictment. A Special Monetary Assessment and a Supervised Release term were also imposed. Judgment was entered accordingly on March 9, 2000. (Docket Nos. 1193-1194).

CIVIL NO. 05-1610(DRD)                                                                                    Page -2-
re: Crim. No. 97-76-8(DRD)

On March 8, 2000, petitioner filed a Notice of Appeal from his conviction and sentence. (Docket No. 1205). The conviction and judgment were both affirmed as per judgment entered by the Court of Appeals on November 10, 2003. (Docket No. 1577). Petitioner moved for certiorari relief before the U.S. Supreme Court; the petition was denied on June 1, 2004. United States v. Soto-Beníquez, 356 F.3d 1 (1st Cir. 2003), cert. denied, 541 U.S. 1074 (2004) (No. 03-9940). On November 24, 2004, petitioner, acting pro se, moved to recall the mandate. Judgment denying said motion was entered on December 10, 2004; certiorari relief from said denial was denied on February 28, 2005. Petitioner then sought Section 2255 relief by way of the instant petition at bar which was timely tendered on May 22, 2005, and filed on June 8, 2005.

Petitioner now requests relief from his sentence alleging that: (1) his Criminal History Category was incorrectly assessed; (2) the Court failed to state on the record its reasons for the imposition of sentence; (3) the drug quantity was incorrectly determined; and (4) the Court erred by "increasing the sentencing range beyond the maximum" based on its findings at sentencing. Petitioner further argues that counsel was ineffective, both at sentencing and on appeal, for failing to object and argue the aforementioned sentencing errors.

The Government timely opposed the request for relief. (Civil Docket No. 5).

Discussion

The Criminal History Category was Properly Determined; Counsel Rendered Constitutionally Effective Representation

Petitioner argues that the Court erred in its assessment of the criminal history points and category applicable to his case. This error, petitioner argues, was compounded by his counsel's ineffective representation before this Court and by failing to raise the argument on appeal. The Court has weighed petitioner's arguments and finds

CIVIL NO. 05-1610(DRD)                                                      Page -3-
re: Crim. No. 97-76-8(DRD)

that the sentence imposed is proper in all respects and that counsel performance was not deficient so as to support a claim of ineffective assistance of counsel.

At the outset, we note that petitioner was initially assigned a criminal history category of V, which was subsequently lowered as per motion entitled "Exceptions to the Presentence Investigation Report," which requested a lower criminal history category. (Docket No. 932; Sentencing Transcript, Docket No. 1377, p. 13). Thus, at the outset, the record itself contradicts petitioner's claims of ineffective assistance of counsel in this regard.

Pursuant to U.S.S.G. § 4A1.1(b), petitioner's criminal history category was initially determined to be a level V, based on 10 criminal history points:

| Conviction | Year Sentenced | Criminal History Points |
|---|---|---|
| • P.R. Penal Code Art. 95 (misdemeanor) | 1991 | 2 |
| • P.R. Penal Code Art. 406 | 1992 | 2 |
| • P.R. Penal Code Art. 404 | 1993 | 3 |

Two (2) additional criminal history points were added as petitioner committed the offense while under a criminal justice sentence, U.S.S.G. § 4A1.1(d), and one (1) additional point was added because the offense was committed less than two years after his release from imprisonment in relation to his 1992 sentence, U.S.S.G. § 4A1.1(e), for a total of 10 criminal history points.

The criminal history category calculation was dissected and subsequently lowered from a level V to a level IV, as expounded during the Sentencing Hearing:[1]

> COUNSEL:    The criminal history we requested that it be amended and I believe it was amended to level four, yes.
>
> THE COURT:  Why is it level four.[?]

---

[1] The page and paragraph references in the dialogue correspond to the Presentence Investigation Report – Civil Docket No. 1, Exhibit D).

CIVIL NO. 05-1610(DRD) Page -4-
re: Crim. No. 97-76-8(DRD)

[....,]

| | |
|---|---|
| PROBATION OFFICER: | Your Honor, on page nine, in 1990 he was sentenced to Article 95, and he got two points for that. On page 10, it reflects that he was also sentenced for violation of Article 404, controlled substances at the local level. And he was – |
| THE COURT: | That was in Arecibo, right? |
| PROBATION OFFICER: | That is correct, Your Honor. |
| THE COURT: | And those facts are away (sic) from the conspiracy in this case. |
| PROBATION OFFICER: | That is correct, Your Honor. |
| THE COURT: | All right. So that's five points. |
| PROBATION OFFICER: | That's five points. But in paragraph 28, it states that since the defendant committed the instant offense while under a criminal justice sentence two other points were added. And since the defendant committed the instant offense less that two years after release from imprisonment on the sentence of May 10, 1991 another point was added. So that comes up to, Your Honor, eight points. And eight points with a criminal history category of four. |
| THE COURT: | Eight points with a criminal history category of four. |
| PROBATION OFFICER: | Yes, Your Honor. |
| THE COURT: | What is the range at five (sic) and 40? |
| PROBATION OFFICER: | Level 40. The range comes up to 360 to life. |

(Sentencing Hearing, Docket No. 1377, pp. 13-16).

In the end, petitioner's criminal history points were lowered from 10 to 8, and the criminal history category was lowered from V to IV.

CIVIL NO. 05-1610(DRD)                                                                                           Page -5-
re:  Crim. No. 97-76-8(DRD)

In addition, counsel argued in favor of a sentence at the lower end of the guideline sentencing range and the Court ruled against the government's position that a mandatory level of 43 should apply:

> But you [counsel] did open your mouth and you did point out to the Court that there is no mandatory 43 in this case, which is correct. At least I interpret it that way, although the U.S. does not.
>
> I want you to know that their position is that since the conspiracy went beyond 1993, November 1993, that I could really use that enhancement. But I'm giving him [defendant García-García] the benefit of the most liberal interpretation to him. However, the fact is, that there are a lot of aggravating circumstances that this case has which are not taken care of by the mere application of the offense levels rules nor by mere application of the criminal history rules.

(Sentencing Hearing, Docket No. 1377, p. 20).

The Court has considered each of petitioner's arguments concerning alleged sentencing errors in detail.

U.S.S.G. § 4A1.1(e), states that, in determining the criminal history category, the sentencing court must "[a]dd 2 points if the defendant committed the instant offense less than two years after release from imprisonment..." According to the petitioner, the prior 1991 conviction could not be considered "prior" because he had already joined the conspiracy.

On the other hand, U.S.S.G. § 4A1.1(d), states that the sentencing court must "[a]dd 2 points if the defendant committed the instant offense while under any criminal justice sentence..." The petitioner contends, however, that his prior state conviction was part of the federal conspiracy and should therefore not have been separately counted.

In <u>United States v. Elwell</u>, 984 F.2d 1289, 1298 (1st Cir. 1993), a case cited by the government in its response, the First Circuit rejected a defendant's argument that, when a prior state conviction occurred after the start of the conspiracy object of the federal prosecution, the district court should exclude it from consideration when determining the

CIVIL NO. 05-1610(DRD) Page -6-
re: Crim. No. 97-76-8(DRD)

defendant's career offender status pursuant to U.S.S.G. § 4B1.1. The Elwell court held that, "continued participation in a conspiracy after a felony conviction renders that conviction a prior felony conviction." Id., at 1298.

More recently, in United States v. Lino, 493 F.3d 41, 42 (1st Cir. 2007), the First Circuit examined "whether a drug distribution felony that took place during the course of an ongoing conspiracy is a 'prior felony drug conviction' for purposes of the § 841(b)(1)(B) enhancement where the conspiracy continued after the prior conviction." Relying on the precedent case of United States v. De Jesús Mateo, 373 F.3d 70, 74 (1st Cir. 2004), the First Circuit held that, "[a] prior drug conviction constitutes a 'distinct criminal episode' sufficient to trigger the enhancement so long as the defendant continued to participate in drug activity after the conviction became final." Lino, supra.

The same analyses apply to the case at bar. Thus, the Court finds that petitioner's 1991 prior state conviction was properly counted pursuant to U.S.S.G. § 4A1.1(e) because the evidence established that petitioner "actively participated in the conspiracy from the beginning, selling drugs at the Cuba Street point from 1990 to 1991 and packaging narcotics for drug points from 1992 to 1993." Soto-Beníquez, 356 F.3d at 24.

Significantly in De Jesús Mateo, 373 F.3d at 74, the First Circuit rejected the argument that "prior convictions do not represent 'distinct criminal episodes' because they are part and parcel of [a defendant's] participation in the conspiracy." Relying on its previous holding in United States v. Martínez-Medina, 279 F.3d 105, 123 (1st cir. 2002), the Court concluded that,

> An ongoing course of criminal conduct such as narcotics trafficking may involve many such criminal episodes, each a discrete occurrence. The fact that all are related, part of a series, or part of a continuous course of criminal dealing, does not necessarily render them a "single" criminal episode, particularly where the episodes occur over time. To so hold would insulate the very career criminals the statute is

CIVIL NO. 05-1610(DRD)                                                                                                        Page -7-
re: Crim. No. 97-76-8(DRD)

>designed to reach – those continuously engaged in criminal conduct.

Id.

By the same token, petitioner's proposition that his prior state convictions should not be counted because they represent the same criminal conduct as the conspiracy in his federal conviction would result in a such a scheme where recidivist criminal conduct would be protected under a conspiracy "umbrella." This Court will not construct such a rule which is barred both by Circuit precedent and common sense.

Petitioner's arguments concerning the 3 points added "for each prior sentence of imprisonment exceeding one year and one month," U.S.S.G. § 4A1.1(a), based on his 1993 prior state conviction for possession with intent to distribute cocaine and marihuana at Arecibo fares no better. According to the petitioner the sentence imposed cannot be considered a "prior sentence" because it was imposed for conduct which was part of the instant offense.

U.S.S.G. § 4A1.2(a)(1), defines "prior sentence" as one "previously imposed upon adjudication of guilt ... for conduct not part of the instant offense."

> A sentence imposed after the defendant's commencement of the instant offense, but prior to the sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense. Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct).

U.S.S.G. § 4A1.2, comment. (n. 1).

"Under this application note, a prior sentence deemed to be relevant conduct (i.e., part of the *res gestae* of the instant offense) is disregarded for purposes of calculating the defendant's criminal history." United States v. Cyr, 337 F.3d 96, 99 n.1 (1st Cir. 2003). In the same vein, U.S.S.G. § 1B1.3, Illustrations of Conduct (n. 8), provides that, "offense

CIVIL NO. 05-1610(DRD) Page -8-
re: Crim. No. 97-76-8(DRD)

conduct associated with a sentence that was imposed prior to the acts or omissions constituting the instant federal offense (the offense of conviction) is not considered as part of the same course of conduct or common scheme or plan as the offense of conviction."

The government highlights the factual differences between the Arecibo and the federal offenses, to wit: the federal offense was a conspiracy to distribute narcotics at the Bitumul (Israel) Ward in San Juan, and did not extend to Arecibo; the Arecibo offense involved only cocaine and marihuana while the federal offense involved cocaine, cocaine base, heroin, and marihuana; the *modus operandi* for both offenses was different with petitioner acting solo in the commission of the Arecibo offense while the federal offense involved 22 conspirators.

In United States v. Beddow, 957 F.2d 1330, 1338 (6th Cir. 1992), the Court of Appeals determined that "the appropriate inquiry is whether the 'prior sentence' and the present offense involve conduct that is severable into two distinct offenses. Factors such as the temporal and geographical proximity of the two offenses, common victims, and a common criminal plan or intent also must be considered" (internal citations omitted).

The Court based its decision to award criminal history points for the Arecibo offense after a direct inquiry to the probation officer in reference to the Presentence Report:

> PROBATION
> OFFICER: Your Honor, on page nine, in 1990 he was sentenced to Article 95, and he got two points for that. On page 10, it reflects that he was also sentenced for violation of Article 404, controlled substances at the local level. And he was –
>
> THE COURT: That was in Arecibo, right?
>
> PROBATION
> OFFICER: That is correct, Your Honor.
>
> THE COURT: And those facts are away (sic) from the conspiracy in this case.

CIVIL NO. 05-1610(DRD)  Page -9-
re: Crim. No. 97-76-8(DRD)

  PROBATION
  OFFICER:  That is correct, Your Honor.

(Sentencing Hearing, Docket No. 1377, p. 13).

  "Facts contained in a presentence report ordinarily are considered reliable evidence for sentencing purposes." United States v. González-Vázquez, 34 F.3d 19, 25 (1st Cir. 1994) (internal quotations omitted).

  Based on the Presentence Report, as amended, and the record as a whole, the Court had more than sufficient information to establish a valid factual predicate and make the requisite sentencing findings concerning the applicable criminal history points and category.

  In his reply, petitioner alleges that the government's argument is piecemeal and that the Court should not have considered sentence-enhancing arguments concerning unsolved murders which were only presented to justify a sentence based on facts unrelated to the actual drug offense. (Civil Docket No. 9). According to the petitioner, admission of such evidence at sentencing was barred by Fed. R. Evid. 404(b).

  It is well-established that "the rules of evidence do not apply at sentencing." United States v. Fleck, 413 F.3d 883, 894 (8th Cir. 2005). However, "information considered by the sentencing court must have 'sufficient indicia of reliability to support [its] probable conclusion.'" Id., citing United States v. Jones, 195 F.3d 379, 385 (8th Cir. 1999).

  While defense counsel argued that petitioner "didn't actually kill anybody," (Sentencing Hearing, Docket No. 1377, at 18), the government advocated for imposition of a life sentence based on the fact that petitioner, "as a member of the conspiracy was aware of the violent nature because he himself engaged in that violence. He possessed weapons in furtherance of the conspiracy. He saw others possess weapons. He knew of the other murders that had been undertaken in order to further the goals of the

CIVIL NO. 05-1610(DRD) Page -10-
re: Crim. No. 97-76-8(DRD)

conspiracy charged..." (Sentencing Hearing, Docket No. 1377, at 16).

Defense counsel further argued that the Court was not bound by enhancements (warranting mandatory life imprisonment) approved by the Sentencing Commission on November 1993, that is, after the murders referred by the government were committed. (Sentencing Hearing, Docket No. 1377, at 17).

The Court found:

> I want you to know that their position is that since the conspiracy went beyond 1993, November 1993, that I could really use that enhancement. But I'm giving [petitioner] the benefit of the most liberal interpretation to him. However, the fact is, that there are a lot of aggravating circumstances that this case has which are not taken care of by the mere application of the offense levels rule nor by the mere application of the criminal history rules.

(Sentencing Hearing, Docket No. 1377, at 20).

Aside from the drug quantity factor, defendant was sentenced at the upper end of the Guidelines, to life in prison, in lieu of the lower 360 months end, precisely due to "defendant's participation in the offense conduct, wherein he showed proclivity towards violence, shown by the fact that he was one of the persons who mounted (sic) [got into] a car to kill César Oscar Nazario, and also at the end of the conspiracy he also mounted (sic) [mounted] a car to kill another person, all related to drugs, and that in the instant offense the conspiracy involved 12 murders which were foreseeable to the defendant pursuant To [U.S.S.G. § 1B1.3]." (Sentencing Hearing, Docket No. 1377, at 22-23).

Petitioner's arguments concerning the Court's consideration of the murders as relevant offense, is allusive to the situation in United States v. Lombard, 72 F.3d 170 (1st Cir. 1995), were the district court sentenced the defendant to a life sentence finding itself without discretion to assign a base offense level of less than 43. In Lombard, the defendants had been tried and acquitted of a murder committed in relation to their federal

CIVIL NO. 05-1610(DRD)                                                                                                Page -11-
re: Crim. No. 97-76-8(DRD)

firearms conviction under 18 U.S.C. §§ 922(g) and 924(e) (career criminal), which specified a statutory minimum of 15 years but no statutory maximum.

In the instant case, rather than divest itself of the discretion to impose a sentence at the lower end of the Guidelines, the Court exercised its discretion by considering the amount of drugs as well as the relevant conduct, all of which it factored into its decision to impose a life sentence which is both correct and constitutional. In fact, the Court was bound to "determine the applicable guideline range in accordance with § 1B1.3 (Relevant Conduct." U.S.S.G. § 1B1.2(b), based on the petitioner's conviction pursuant to 21 U.S.C. §§ 841(a)(1) and 846, carrying a statutory maximum sentence of life imprisonment. Contrary to Lombard, the Court did not impose a mandatory life sentence pursuant to the Guidelines because it based its decision on a total base offense level of 40, not 43. Moreover, in this case, also contrary to Lombard, the sentence complied with the express statutory maximum of life in prison for the offense of conviction. 21 U.S.C. § 841(b)(1)(A)(ii).

Further, in United States v. Meyer, 157 F.3d 1067 (7th Cir. 1998), the U.S. Court of Appeals for the Seventh Circuit rejected the defendant's argument that the district court violated his due process by enhancing his drug conspiracy sentence based on his alleged participation in murders committed during the course of the conspiracy. The Court found that "[w]hile [it] realize[d] that murder is the most odious of crimes, it is clear that 'sentencing judges may look to the conduct surrounding the offense of conviction in fashioning an appropriate sentence, regardless of whether the defendant was ever charged with or convicted of that conduct, and regardless of whether he could be.'" Id., at 1081-82, citing United States v. Dawn, 129 F.3d 878, 885 (7th Cir. 1997).

Thus, even though the petitioner was not tried for murder, the Court "was able to consider evidence of the murders as 'relevant conduct' under § 1B1.3(a)(1) which

CIVIL NO. 05-1610(DRD) Page -12-
re: Crim. No. 97-76-8(DRD)

provides that cross-references in Chapter Two should be determined based on 'all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... that occurred during the commission of the offense of conviction..." Id., at 1081.

Petitioner's case, in this regard, is no different, as he "does not have a right to have his sentence determination confined to facts proven beyond a reasonable doubt." Id., at 1082, citing McMillan v. Pennsylvania, 477 U.S. 79, 92 (1986).

The Court Adequately Articulated its Sentencing Rationale

According to the petitioner, the Court did not state for the record its reasons to impose the sentence. This argument is unwarranted and clearly refuted by the record of the case.

The Statement of Reasons or "the explanation requirement is primarily intended to ensure meaningful appellate review of the reasonableness of a sentence." United States v. Arango, ___ F.3d ___, 2007 WL 3379807, *11 (1st Cir. Nov. 15, 2007). "An explanation in open court also furthers the weighty goals of transparency and credibility for the justice system." Id.

> The rationale by which a district court reaches a final sentence is important. It offers the defendant, the government, the victim, and the public a window into the decision-making process and an explanation of the purposes the sentence is intended to serve. It promotes respect for the adjudicative process, by demonstrating the serious reflection and deliberation that underlies each criminal sentence, and allows for effective appellate oversight.

United States v. Grier, 475 F.3d 556, 572 (3rd Cir. 2006) (en banc), cited in Arango, id.

The court addressed all sentencing issues at length and approved an amendment to the Presentence Report, lowering petitioner's criminal history points from 10 to 8, and the criminal history category from V to IV. The Court also ruled in petitioner's favor and

CIVIL NO. 05-1610(DRD)                                                                              Page -13-
re:  Crim. No. 97-76-8(DRD)

against the government's position that a mandatory level of 43 should apply. (Sentencing Hearing, Docket No. 1377, p. 20).

In conclusion, rather than shy away from its responsibility to articulate its rationale for the sentence imposed, the Court clearly and transparently discerned its reasoning on the record. The Court thus reject petitioner's arguments as they are belied by the findings made in open court concerning the reasons to impose sentence.

<u>The Foreseeability of Drug Type and Quantity are Supported by the Record</u>

Petitioner argues that the Court failed to make an individualized drug type and quantity finding to justify his sentence, in violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). According to the petitioner the Court erred in holding him responsible for the entire amount of narcotics involved in the overall conspiracy, an amount which was allegedly not reasonably foreseeable to him.

At sentencing, pursuant to U.S.S.G. § 2D1.1, the Court lowered the base offense level from 43 to 38:

> The level is determined by the Court, either by 1.5 kilograms of crack cocaine, which was distributed by the conspiracy and was reasonably foreseeable by the defendant or by the 150 kilograms of cocaine – or by 150 kilograms of cocaine easily reachable by the bust of drugs stolen in Fajardo, brought to the Bitumul conspiracy."

(Docket No. 1377, Sentencing Transcript at 22).

Because petitioner was also held accountable for possession of a weapon by a co-defendant, and because his criminal history category reached a level IV, his total offense level was 40, with a guideline sentencing range of 360 months to life imprisonment.

In <u>Apprendi</u>, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed maximum must be

CIVIL NO. 05-1610(DRD)                                                                                    Page -14-
re: Crim. No. 97-76-8(DRD)

submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. In this case, the statutory maximum for the charged offense conduct was life, and petitioner was sentenced to life imprisonment, a sentence within the prescribed maximum.

In addition, petitioner did not raise this claim on appeal and is therefore foreclosed from raising it collaterally. Significantly, this same claim was raised by other co-defendants and rejected by the Court of Appeals which held that the jury instruction that "the actual amount of drugs need not be proven and that the government need only prove that defendants distributed or possessed with intent to distribute a 'measurable amount' of drugs," Soto Beníquez, 356 F.3d at 45-46, resulted in Apprendi error. However, it also determined that the error was harmless beyond a reasonable doubt since the evidence in the case overwhelmingly established that the amount of drugs distributed by the conspiracy was least five kilograms of cocaine "which trigger[ed] a maximum sentence of life imprisonment for all co-conspirators under 21 U.S.C. § 841(b)(1)(A) and § 846." Soto Beníquez, 356 F.3d at 46.

The trial and sentencing record supports the district court's calculation of the amount of drugs reasonably foreseeable to the petitioner. At trial, Luis Daniel Torrens Alicea, testified that the cocaine, crack, and marijuana sold at the "Callejón Nine" drug point were "decked" at the petitioner's home, which was close by. He also testified that petitioner engaged in the sale of narcotics at "Callejón Nine." (Trial Transcript, Docket No. 991, pp. 68-70, 83, 87-89, 91). Hence, the amount of drugs was reasonably foreseeable. See, United States v. de la Cruz, 996 F.2d 1307, 1314 (1st 1993) ("A narcotics conspirator is responsible not only for drugs he actually handled or saw, but also for the full quantity of drugs that he reasonably could have foreseen to be embraced by the conspiracy he joined."); see also, United States v. Santos, 357 F.3d 136, 140 (1st Cir. 2004); United States v. Laboy, 351 F.3d 578, 582 (1st Cir. 2003).

CIVIL NO. 05-1610(DRD)                                                                   Page -15-
re:  Crim. No. 97-76-8(DRD)

Petitioner's claim is therefore foreclosed by the law of the case, pursuant to which it stands to reason that counsel's failure to interpose any specific objections to the type and quantity of drugs attributed to the petitioner, or to raise the issue on appeal, did not render his legal assistance constitutionally ineffective.

Petitioner's "Booker" Claim is Foreclosed

Petitioner's claims of ineffective assistance of counsel in light of Booker v. United States, 543 U.S. 220 (2005) (holding that facts supporting enhanced sentence must be proved to the jury beyond a reasonable doubt or admitted by defendant), are equally unavailing.  Booker does not apply retroactively to motions under Section 2255 where the judgment was final as of January 12, 2005, the date Booker issued.  Lloyd v. United States, 407 F.3d 608, 615-16 (3rd Cir. 2005); see also, Guzmán v. United States, 404 F.3d 139 (2nd Cir. 2005).  This is significant in light of the fact that "Booker limited its holdings to only those cases pending in direct review."  Isernio v. United States, ___ F.Supp.2d ___, 2007 WL 1598104 (E.D.N.Y. June 4, 2007).

The First Circuit Court of Appeals has squarely considered and rejected the claim of Booker's  retroactive application, acknowledging that "[e]very other circuit that has considered this issue has agreed that Booker does not apply retroactively." Cirilo-Muñoz v. United States, 404 F.3d 527, 533 (1st Cir. 2005) (collecting cases).  "Realistically, it is unlikely that the Supreme Court will adopt a retroactivity analysis that opens up to required reexamination practically all of the federal sentences imposed since the guidelines went into effect in 1987."  Id.  Moreover, "petitions under 28 U.S.C. § 2255 are unavailable to advance Booker claims in the absence of a Supreme Court decision rendering Booker retroactive."  United States v. Fraser 407 F.3d 9, 11 (1st Cir. 2005 ) (denying motion to recall mandate, citing Cirilo-Muñoz).

In this case, petitioner's writ for certiorari review was denied on June 1, 2004, well

CIVIL NO. 05-1610(DRD)                                                                        Page -16-
re:  Crim. No. 97-76-8(DRD)

before Booker issued.  United States v. Soto-Beníquez, 356 F.3d 1 (1st Cir. 2003), cert. denied, 541 U.S. 1074 (2004) (No. 03-9940).  For the reasons previously set forth, petitioner's attempt to raise a retroactive "Booker" claim is irrefutably precluded.

## Conclusion

WHEREFORE, for the foregoing reasons, the Motion to Vacate, Set Aside, or Correct the Sentence pursuant to 28 U.S.C. § 2255 (Docket No. 1) is DENIED; judgment shall enter accordingly.  Because petitioner has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability.  28 U.S.C. § 2253(c)(1)(B) and (c)(2); Fed. R. App. P. 22(b)(1); First Circuit Loc. R. 22.1(a).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of December, 2007.

                                                        s/ Daniel R. Domínguez
                                                        DANIEL R. DOMINGUEZ
                                                        U.S. DISTRICT JUDGE